IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| STEPHEN J. ROSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) No. |
| | ) |
| GUARDSMARK, LLC, IRA A. LIPMAN, | ) JURY DEMAND |
| ROBERT W. OVERMAN, and RAMONA G. | ) |
| MARTIN, individually, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Stephen J. Rosen, and does make the following Complaint against the above-named Defendants.

1. Plaintiff is a resident of Cordova, Shelby County, Tennessee.

2. Defendant, Guardsmark, LLC ("Guardsmark"), is a Delaware corporation, operating its principal place of business in Memphis, Shelby County, Tennessee. Guardsmark, may be served with process through its Registered Agent, CT Corporation System, 800 S. Gay St., Suite 2021, Knoxville, Tennessee, 37929-9710.

3. Defendant, Ira A. Lipman ("Mr. Lipman"), is the President and Chief Executive Officer of Guardsmark. Upon information and belief, Mr. Lipman is a resident of New York City, New York. Mr. Lipman may be served with process at Guardsmark, LLC, 10 Rockefeller Plaza, 12th Floor, New York, New York 10020-1903.

4. Defendant, Robert W. Overman, Ph.D ("Dr. Overman"), is the Vice President, Manager Human Resources at Guardsmark. Upon information and belief, Dr. Overman is a resident of Memphis, Shelby County, Tennessee. Dr. Overman may be served with process at 22 South Second Street, Memphis, Tennessee 38103.

5. Defendant, Ramona G. Martin ("Ms. Martin"), is Vice President, Manager Human Resources Services at Guardsmark. Upon information and belief, Ms. Martin is a resident of Memphis, Shelby County, Tennessee. Ms. Martin may be served with process at 22 South Second Street, Memphis, Tennessee 38103.

6. Defendant Guardsmark is an "employer" within the definition and coverage of the Tennessee Disability Act ("TDA") and the Family Medical Leave Act ("FMLA"). As such, Guardsmark is vicariously liable for the intentional, reckless, and negligent acts and/or omissions of its employees, agents, and representatives who were directly involved in the matters set forth herein.

7. At all times relevant hereto, Mr. Lipman, Dr. Overman, and Ms. Martin were agents, employees, and representatives of Guardsmark.

8. This Complaint involves allegations of interference and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, disability discrimination under the Tennessee Disability Act, at Tenn. Code Ann. § 8-50-103(b), as well as common law claims of intentional infliction of emotional distress and negligent infliction of emotional distress.

9. Jurisdiction is appropriate in this court under 28 U.S.C. § 1331 as this case involves claims arising under federal law. This court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff, Stephen J. Rosen ("Plaintiff"), was employed by Defendant Guardsmark from on or about July 20, 1998, until on or about June 1, 2012, at which time he was terminated

due to his disability or perceived disability in violation of the Tennessee Disability Act and/or for exercising his right to medical leave under the Family and Medical Leave Act.

11. At said dates and times of the allegations set forth herein, Ira A. Lipman, President and Chief Executive Officer of Guardsmark, Robert W. Overman, Ph.D, Vice President, Manager Human Resources at Guardsmark, and Ramona G. Martin, Vice President, Manager Human Resources Services at Guardsmark, as agents and/or employees of Guardsmark, took an active role in disability discrimination against Plaintiff in violation of the Tennessee Disability Act. Mr. Lipman, Dr. Overman, and Ms. Martin, as agents and/or employees of Guardsmark, also took an active role in the interference of Plaintiff's rights under the Family and Medical Leave Act and/or took an active role in the retaliation against Plaintiff in violation of his rights under the Family and Medical Leave Act.

12. Plaintiff began working as a Manager Recruitment, Human Resources Recruitment at Guardsmark on or about July 20, 1998. Plaintiff was promoted to Vice President, Manager Recruitment, effective January 1, 2003. Plaintiff worked in this position until on or about April 12, 2012.

13. As the Vice President, Manager Recruitment at Guardsmark, Plaintiff was responsible for the management of Guardsmark's recruitment and selection process. Plaintiff was at all times qualified for his position and performed his job duties in a satisfactory manner.

14. During Plaintiff's tenure in Guardsmark's Human Resources department, Dr. Overman was his immediate supervisor. Dr. Overman reported directly to Mr. Lipman, President and Chief Executive Officer of Guardsmark.

15. After working in the Human Resources department at Guardsmark for over a decade, Plaintiff sought a transfer within the company. As a result, on April 2, 2012, Kimberly

Kowallis transferred from her position as Human Resources Specialist at Guardsmark's San Francisco, California office to Guardmark's Memphis, Tennessee office. Plaintiff was to train Ms. Kowallis for ninety (90) days to work in Human Resources, and thereafter, Plaintiff would be reassigned to another position at Guardsmark.

16. On April 9, 2012, shortly after Ms. Kowallis' transfer to Guardsmark's Memphis office, Plaintiff was summoned to a meeting with Greg L. Gile, Vice President, Chief Learning and Chief Marketing Officer at Guardsmark. During this meeting, Mr. Gile informed Plaintiff that Kevin Ponder, Project Manager, Communications Department at Guardsmark, was resigning his employment. Mr. Gile explained that Guardsmark had an urgent need to replace Mr. Ponder and Plaintiff had been selected to be his replacement.

17. Later that same day, Ms. Martin instructed Plaintiff to contact Dr. Overman regarding the above-referenced reassignment into Guardsmark's Communications Department. Plaintiff telephoned Dr. Overman's office to discuss the reassignment and also met with Dr. Overman in his office. Ms. Martin joined the latter conversation in Dr. Overman's office, during which Plaintiff was informed that his reassignment was not optional.

18. On April 12, 2012, Plaintiff was summoned to a meeting via video teleconference with Mr. Lipman, Dr. Overman, and Mr. Gile. Mr. Lipman, along with Guardsmark General Counsel, Gareth Leviton, appeared at this meeting via video teleconference from Guardsmark's New York City office. During this video teleconference, Mr. Lipman confirmed that Plaintiff would be reassigned to the position of Vice President, Sales and Marketing, effective immediately, as a replacement for Mr. Ponder. Plaintiff accepted this re-assignment and remained in this position until his termination.

19. Mr. Lipman informed Plaintiff during the above referenced video teleconference that Plaintiff's salary would remain at its current level, and that at the end of a ninety (90) day period, or on or about July 12, 2012, Mr. Lipman would determine whether Plaintiff's salary should be adjusted.

20. In his role as Vice President, Sales and Marketing, Plaintiff reported directly to Mr. Gile, who, in turn, reported directly to Mr. Lipman. Plaintiff was at all times qualified for this position and performed his job duties in a satisfactory manner.

21. On May 4, 2012, Plaintiff met with Dr. Overman to discuss his new role as Vice President, Sales and Marketing at Guardsmark. Plaintiff's conversation with Dr. Overman was positive and at no point during this meeting or at any other time during Plaintiff's tenure as Vice President, Sales and Marketing, was Plaintiff informed that his job position at Guardsmark would be or was in danger of being eliminated. Rather, Plaintiff's new position was considered so essential that his transition into same was immediate, thus, truncating his training of Ms. Kowallis.

22. On Monday, May 7, 2012, Plaintiff intentionally overdosed on prescription medication.

23. During Plaintiff's employment with the Defendant, he suffered from numerous serious medical conditions, including Major Depressive Disorder, Generalized Anxiety Disorder, Obstructive Sleep Apnea, Type 2 Diabetes, and Diverticulitis.

24. Plaintiff was diagnosed with severe clinical depression in the form of Major Depressive Disorder in approximately 1986. Plaintiff has been under medical care for this condition for approximately twenty-seven (27) years. Plaintiff takes and has consistently taken

medication for this condition. As a result of his clinical depression, Plaintiff is a qualified individual with a disability, as that term is defined by the Tennessee Disability Act.

25. Guardsmark, through its agents and/or employees, was aware of Plaintiff's disability. Plaintiff had taken two prior medical leaves of absence from Guardsmark pursuant to the FMLA in connection with said health condition/disability.

26. The morning of Monday, May 7, 2012, Plaintiff's wife, Bonnie L. Rosen ("Ms. Rosen"), received a telephone call from Ms. Phyllis Niegelberg ("Ms. Niegelberg"), wife of Joel Niegelberg, Vice President, Finance and Accounting at Guardsmark. Ms. Neigelberg informed Mrs. Rosen that Plaintiff had not reported for work or called Guardsmark, an extremely unusual occurrence.

27. Mrs. Rosen was out of town when she received Ms. Niegelberg's call and immediately telephoned her children, Rachel R. Phelps and Carl Rosen, both of whom reside in Memphis, Tennessee, to inquire as to Plaintiff's whereabouts.

28. Ms. Phelps went to the Rosen home to check on Plaintiff. There, Ms. Phelps discovered Plaintiff unconscious and called for emergency medical assistance. Emergency personnel responded and transported Plaintiff to the emergency room at Methodist LeBonheur Germantown Hospital in Germantown, Tennessee.

29. While Plaintiff was in the emergency room, his son, Carl Rosen, received a telephone call from Dr. Overman. Carl Rosen gave the telephone to his sister, Ms. Phelps, who spoke briefly with Dr. Overman regarding Plaintiff's condition. Ms. Phelps explained that Plaintiff had intentionally overdosed on prescription medication, was unconscious, critically ill, and in intensive care.

30.     On May 7, 2012, Plaintiff was moved to the Intensive Care Unit at Methodist LeBonheur Germantown Hospital in Germantown, Tennessee, where he continued to receive treatment until discharged from the hospital and transferred to the psychiatric ward of St. Francis Hospital in Memphis, Tennessee, where he remained until discharged on May 21, 2012.

31.     On May 8, 2012, at approximately 10:47 am, Mrs. Rosen, Plaintiff's wife, spoke to Dr. Overman regarding Plaintiff's attempted suicide and current medical condition.

32.     On May 9, 2012, at approximately 2:48 pm, Mrs. Rosen made a follow-up call to Dr. Overman to update him on Plaintiff's condition.  During this telephone conversation, Dr. Overman informed Mrs. Rosen that she would be receiving Family Medical Leave Act ("FMLA") paperwork from Guardsmark via U.S. mail.  Dr. Overman directed her to contact Ms. Martin with any questions or concerns as to this FMLA paperwork.

33.     On May 10, 2012, at approximately 3:18 pm, Mrs. Rosen spoke with Ramona Martin.  Ms. Martin informed Mrs. Rosen that she (Mrs. Rosen) could complete the FMLA paperwork on behalf of Plaintiff, if Plaintiff was unable to do so.

34.     During Plaintiff's hospitalization, he received two checks from Guardsmark, totaling $2,681.36 and $1,458.09, respectively.  Each check was marked with a pay date of May 18, 2012.

35.     Upon receipt of the checks described in paragraph 34, Mrs. Rosen attempted to contact Guardsmark to determine their purpose.  Specifically, Mrs. Rosen placed telephone calls to Ms. Martin twice on May 30, 2012, again on May 31, 2012, and again on June 1, 2012.  Mrs. Rosen received no response to any of these telephone calls.  On June 1, 2012, Mrs. Rosen also sent an email to Ms. Martin to inquire as to the nature of these checks.  Ms. Martin again failed to respond.

36. A few days into Plaintiff's hospitalization, Mrs. Rosen received FMLA paperwork from Guardsmark, LLC. On May 21, 2012, Plaintiff completed said FMLA paperwork, specifically, the documents entitled "Guardsmark Application for Leave of Absence under the Provisions of The Family and Medical Leave Act of 1993" and the U.S. Department of Labor's "Certification of Health Care Provider for Employee's Serious Health Condition."

37. In the above described FMLA paperwork, Plaintiff requested a medical leave of absence from work at Guardsmark due to his serious health condition as certified by his authorized health care provider. Plaintiff indicated on the paperwork that his last day of work was May 4, 2012, with an anticipated return to work on July 8, 2012.

38. Mrs. Rosen returned the completed FMLA paperwork to Ms. Martin, via facsimile, on May 22, 2012. Less than two weeks later, without any intervening communication to Plaintiff, Guardsmark terminated Plaintiff's employment.

39. Defendant's termination letter to Plaintiff, dated June 4, 2012, was hand-delivered to his home via Fed-Ex. The letter signed by Ms. Martin, on behalf of Guardsmark stated that Plaintiff's position in the Communications Department had been eliminated, effective June 1, 2012. A copy of this termination letter is attached hereto as <u>Exhibit A</u>.

40. Ms. Martin further stated within the letter that Plaintiff's termination was part of a company-wide reduction in workforce. However, no such reduction took place at Guardsmark. Ms. Martin further stated in the letter, "[s]ince your position with the company is being eliminated, Guardsmark has no basis to grant and therefore declines your application for leave under the Family Medical Leave Act (FMLA)."

41. Plaintiff was terminated from his employment at Guardsmark despite his good standing with the company and a complete lack of disciplinary action on his record.

42. After Plaintiff's termination, other persons without disabilities took on his job responsibilities, including Phoebe Neal Moore, Marketing Manager at Guardsmark, Randy Bruce, Publications Manager at Guardsmark, and Tiffany Derrick, Marketing Specialist and Secretary at Guardsmark.

43. At the time of his termination from Guardsmark, Plaintiff was earning approximately $140,600.00 per year, plus company benefits.

44. Plaintiff was not offered a severance in spite of Guardsmark precedent and policy of offering a severance of employment at Guardsmark to employees with comparable years of service.

45. Plaintiff intended to work at Guardsmark until he reached the age of 70 in September 2018.

46. On March 13, 2013, Plaintiff timely filed a Charge of Discrimination with the EEOC, which is attached hereto and marked as Exhibit B. Plaintiff has requested, but not yet received, a Notice of Right to Sue from the EEOC. Upon receipt of said Notice of Right to Sue, Plaintiff will seek to amend this Complaint to assert claims pursuant to the Americans with Disabilities Act.

### COUNT 1: DISABILITY DISCRIMINATION IN VIOLATION OF TENNESSEE DISABILITY ACT

47. Plaintiff re-alleges the specific allegations contained in paragraphs 1 - 45 of this Complaint.

48. Plaintiff is a qualified individual with a disability under the Tennessee Disability Act.

49. Plaintiff avers that his health problems, as described herein, affected one or more of his major life activities and rendered him disabled within the meaning of the Tennessee Disability Act.

50. At all pertinent times, Plaintiff was disabled within the meaning of the Tennessee Disability Act or was regarded by Guardsmark as having a disability. Guardsmark, through its agents and/or employees, knew or had reason to know of Plaintiff's disability.

51. Plaintiff was, at all times relevant to this Complaint, qualified to perform the job requirements of his position at Guardsmark. Plaintiff met the minimum objective criteria required for the position and demonstrated possession of the required general skills required for the position.

52. Plaintiff was intentionally, maliciously, and with reckless indifference discriminated against by Guardsmark based upon his disability and/or his perceived disability in violation of the Tennessee Disability Act.

53. Plaintiff suffered an adverse employment action as a result of the disability discrimination of Guardsmark. Specifically, Guardsmark adversely changed the terms, conditions, and privileges of Plaintiff's employment by terminating his position based on his disability and/or perceived disability.

54. Following Plaintiff's termination, he was replaced by individuals without a disability.

55. Guardsmark condoned the disability discrimination asserted against Plaintiff by failing to address or take corrective action against the offending parties.

56. Guardsmark's contention that Plaintiff was terminated as a result of a reduction in workforce is pretext for its unlawful disability discrimination against him. Plaintiff avers that

the real reason for Guardsmark's termination of his employment was his disability or alternatively because he was perceived as disabled in violation of Plaintiff's rights under the Tennessee Disability Act.

57. Plaintiff avers that Guardsmark's unlawful acts, as described herein, were committed by individuals acting on behalf of Guardsmark, with the intent and/or result of illegally discriminating against the Plaintiff because of his disability or his perception as being a disabled individual and constituted a violation of his rights under the Tennessee Disability Act.

58. As a direct and proximate consequence of the intentional, unlawful, and discriminatory employment policies and practices Guardsmark, Plaintiff has suffered monetary damages, including, but not limited to, a loss of income, including past wages, future wages and company-sponsored benefits.

59. As a direct and proximate consequence of the intentional, unlawful, and discriminatory employment policies and practices Guardsmark, Plaintiff has suffered and continues to suffer, non-monetary damages, including, but not limited to, mental and physical pain and suffering, embarrassment and humiliation.

## COUNT 2: INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

60. Plaintiff re-alleges the specific allegations contained in paragraphs 1 - 45 of this Complaint.

61. Plaintiff is an eligible employee as defined by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* and has a serious health condition as is defined by the FMLA.

62. Guardsmark is a covered employer as defined by the FMLA.

63. Mr. Lipman, Dr. Overman, and Ms. Martin each had the ability to control, in whole or in part, whether Plaintiff could take a leave of absence under the FMLA and return to his work position at Guardsmark. Additionally, Mr. Lipman, Dr. Overman, and Ms. Martin each exercised sufficient control over Plaintiff's request for FMLA leave, as well as Plaintiff's employment status. Accordingly, Defendants Lipman, Overman, and Martin are sued in their individual capacities for their violation of the FMLA.

64. Plaintiff sought and was directly encouraged by Guardsmark to seek and was entitled to take a medical leave of absence from Guardsmark under the FMLA following his attempted suicide in May of 2012.

65. Plaintiff complied with the requirements necessary to exercise his rights to medical leave under the FMLA.

66. Plaintiff gave Guardsmark notice of his intent to take FMLA leave. At the time of Plaintiff's termination, Plaintiff's supervisors were well aware of his health condition and his intent to take FMLA.

67. Guardsmark denied Plaintiff his right to FMLA benefits and interfered with the FMLA rights to which Plaintiff was entitled.

68. Mr. Lipman, Dr. Overman, and Ms. Martin each acted, directly or indirectly, in the interest of Guardsmark, in interfering with Plaintiff's rights to medical leave under the FMLA.

69. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered monetary damages, including, but not limited to, a loss of income, including past wages, future wages and company-sponsored benefits.

70.     As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer, non-monetary damages, including, but not limited to, mental and physical pain and suffering, embarrassment and humiliation.

### COUNT 3: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

71.     Plaintiff re-alleges the specific allegations contained in paragraphs 1 - 45 of this Complaint.

72.     Plaintiff engaged in statutorily protected conduct when he requested FMLA leave from Guardsmark.

73.     Mr. Lipman, Dr. Overman, and Ms. Martin each had the ability to control, in whole or in part, whether Plaintiff could take a leave of absence under the FMLA and return to his work position at Guardsmark.  Additionally, Mr. Lipman, Dr. Overman, and Ms. Martin each exercised sufficient control over Plaintiff's request for FMLA leave, as well as Plaintiff's employment status.  Accordingly, Defendants Lipman, Overman, and Martin are sued in their individual capacities for their violation of the FMLA.

74.     Plaintiff suffered an adverse employment action in the form of the denial of his FMLA benefits and termination from Guardsmark.

75.     Guardsmark's termination of Plaintiff was in direct retaliation for his request for leave under the FMLA.

76.     Mr. Lipman, Dr. Overman, and Ms. Martin each acted, directly or indirectly, in the interest of Guardsmark in retaliating against Plaintiff.

77.     In denying the aforementioned to Plaintiff, Defendants willfully and unlawfully retaliated against Plaintiff because he requested leave under the FMLA.

78. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered monetary damages, including, but not limited to, a loss of income, including past wages, future wages and company-sponsored benefits.

79. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer, non-monetary damages, including, but not limited to, mental and physical pain and suffering, embarrassment and humiliation.

### COUNT 5: INTENIONAL INFLICTION OF EMOTIONAL DISTRESS

80. Plaintiff re-alleges the specific allegations contained in paragraphs 1 - 45 of this Complaint.

81. Defendants' conduct as set forth in this complaint was intentional and/or reckless.

82. Defendants' conduct is outrageous and may not be tolerated by civilized society.

83. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer, serious mental injury.

### COUNT 6: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

84. Plaintiff re-alleges the specific allegations contained in paragraphs 1 - 45 of this Complaint.

85. Defendants owed a duty of care to Plaintiff, which it breached, causing loss and injury to Plaintiff.

86. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer, serious mental injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court render judgment in his favor for:

1. Back pay, front pay, all other benefits of employment lost as a result of the actions described herein, and compensatory damages in an amount to be established at trial;

2. Costs and attorneys' fees associated with being forced to litigate this action and to protect his rights under both state and federal law;

3. Prospective and equitable relief such as the Court may deem proper to prevent Defendants from or other otherwise discriminating against Plaintiff in the future;

4. Pre-judgment interest and post-judgment interest on all amounts properly due and owing to Plaintiff as a result of the actions of Defendants;

5. The imposition of liquidated damages for Defendants' willful violations of the FMLA;

6. The imposition of punitive damages for Guardsmark's reckless and intentional conduct in violation of the TDA;

7. Such other relief as the Court may deem proper; and,

8. Plaintiff demands a jury to try this cause of action.

<u>/s/ Jennifer M. Lankford</u>
James K. Simms, IV (#21688)
Jennifer M. Lankford (#29306)
Cornelius & Collins, LLP
Suite 1500, Nashville City Center
511 Union Street
Nashville, Tennessee 37219
Phone: (615) 244-1440
Fax:     (615) 254-9477
jksimms@cornelius-collins.com
jmlankford@cornelius-collins.com

*Attorneys for Plaintiff,*
*Stephen J. Rosen*
