IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| STEPHEN J. ROSEN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 13-2369-STA-tmp |
|  | ) |  |
| GUARDSMARK, LLC; | ) |  |
| IRA A. LIPMAN; | ) |  |
| ROBERT W. OVERMAN; and | ) |  |
| RAMONA G. MARTIN, Individually, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

**ORDER GRANTNG IN PART, DENYING IN PART DEFENDANTS' RENEWED MOTION TO DISMISS**

---

Before the Court is Defendants Guardsmark, LLC; Ira A. Lipman; Robert W. Overman; and Ramona G. Martin's Renewed Motion to Dismiss (D.E. # 21) filed on October 24, 2013.[1] Plaintiff Stephen J. Rosen has filed a response in opposition. For the reasons set forth below, Defendants' Motion is **GRANTED IN PART, DENIED IN PART**.[2]

---

[1] Defendants initially filed a Rule 12(b)(6) motion on July 25, 2013. *See* D.E. # 10. In response to Defendants' motion, Plaintiff filed an unopposed motion to amend his pleadings (D.E. # 18), which the Court granted. Because Plaintiff's Amended Complaint superseded his initial pleadings, the Court denied Defendants' motion to dismiss as moot. Thus, the Motion before the Court is a renewed Motion to Dismiss.

[2] Defendants have filed a Motion for Extension of Discovery Deadlines (D.E. # 22) requesting that in the event the Court does not dismiss all claims, Defendants might have fourteen days from the entry of the Court's order on the Motion to Dismiss in which to respond to discovery. The Motion for Extension is **GRANTED**.

1

## BACKGROUND

Plaintiff's Amended Complaint includes claims of discrimination under the Americans with Disabilities Act ("ADA") and the Tennessee Disability Act ("TDA"); interference and retaliation in violation of the Family Medical Leave Act ("FMLA"); and the common law tort of intentional infliction of emotional distress. The Amended Complaint alleges that Plaintiff was employed by Defendant Guardsmark from on or about July 20, 1998, until his termination on or about June 1, 2012. (Am. Compl. ¶ 10.) Plaintiff began working in manager recruitment and human resources recruitment at Guardsmark in July 1998. (*Id.* ¶ 12.) Plaintiff was promoted to vice president of manager recruitment, effective January 1, 2003. (*Id.*) Plaintiff remained in this position until on or about April 12, 2012. (*Id.*) As the vice president of manager recruitment, Plaintiff was responsible for the management of Guardsmark's recruitment and selection process. (*Id.*) During Plaintiff's tenure in Guardsmark's human resources department, Defendant Robert Overman, Ph.D. was his immediate supervisor. (*Id.* ¶ 14.) Dr. Overman reported directly to Defendant Ira A. Lipman, president and chief executive officer of Guardsmark. (*Id.*) Plaintiff was at all times qualified for his position and performed his job duties in a satisfactory manner. (*Id.* ¶ 13.)

After working in human resources for over a decade, Plaintiff sought a transfer within the company. (*Id.* ¶ 15.) On April 2, 2012, Kimberly Kowallis transferred from her position as human resources specialist in Guardsmark's San Francisco, California office to the Memphis, Tennessee office. (*Id.*) Plaintiff was to train Kowallis for a period of 90 days. (*Id.*) Thereafter, Plaintiff would be reassigned to another position at Guardsmark. (*Id.*) On April 9, 2012, shortly after Kowallis's transfer to the Memphis office, Plaintiff was summoned to a meeting with Greg L. Gile, vice president and chief learning and chief marketing officer at Guardsmark. (*Id.* ¶ 16.) During the

meeting, Gile informed Plaintiff that a position had just opened, the company had an urgent need to fill the position, and Plaintiff had been selected. (*Id.*)³ Later the same day, Defendant Ramona G. Martin instructed Plaintiff to contact Overman about his reassignment. (*Id.* ¶ 17.) Plaintiff telephoned Overman's office and later met with Overman and Martin. (*Id.*) Plaintiff was told that his reassignment was not optional. (*Id.*)

On April 12, 2012, Plaintiff participated in a video teleconference with Lipman, Overman, and Gile about his reassignment. (*Id.* ¶ 18.) During the teleconference, Lipman confirmed that Plaintiff would be reassigned as vice president of sales and marketing, and Plaintiff accepted the reassignment, remaining in the position until his termination. (*Id.*) Lipman further informed Plaintiff that he would continue to earn the same salary for the first 90 days and then Lipman would reevaluate Plaintiff's compensation. (*Id.* ¶ 19.) In his role as vice president of sales and marketing, Plaintiff reported directly to Gile, who in turn reported directly to Lipman. (*Id.* ¶ 20.) Plaintiff was at all times qualified for this position and performed his job duties in a satisfactory manner. (*Id.*)

On May 4, 2012, Plaintiff met with Overman to discuss his new role. (*Id.* ¶ 21.) According to the Amended Complaint, Plaintiff's meeting with Overman was positive and at no point during the meeting or at any other time during Plaintiff's tenure as vice president of sales and marketing was Plaintiff informed that his job position with the company would be or was in danger of being eliminated. (*Id.*) Rather, Plaintiff's new position was considered so essential that his reassignment transition was immediate, thereby shortening his training of Kowallis in her transition to human

---

³ Paragraph 18 of the Amended Complaint alleges that Plaintiff was reassigned to the position of vice president of sales and marketing, while paragraphs 16 and 39 seem to allege that the newly vacant position was project manager in the communications department. Whatever the precise title of the position was, the issue is not material to the issues raised in Defendants' Rule 12(b)(6) Motion.

resources. (*Id.*)

On Monday, May 7, 2012, Plaintiff intentionally overdosed on prescription medication. (*Id.* ¶ 22.) During the course of Plaintiff's tenure with Defendant, he had suffered from numerous serious medical conditions, including major depressive disorder, generalized anxiety disorder, obstructive sleep apnea, type 2 diabetes, and diverticulitis. (*Id.* ¶ 23.) Plaintiff was diagnosed with severe clinical depression in the form of major depressive disorder in approximately 1986. (*Id.* ¶ 24.) Plaintiff has been under medical care for this condition for approximately twenty-seven (27) years. (*Id.*) Plaintiff takes and has consistently taken medication for this condition. (*Id.*) As a result of his clinical depression, Plaintiff is a qualified individual with a disability, as that term is defined by the Tennessee Disability Act. (*Id.*) Defendant Guardsmark, through its agents and/or employees, was aware of Plaintiff's disability. (*Id.* ¶ 25.) Plaintiff had taken two prior medical leaves of absence from Guardsmark pursuant to the FMLA in connection with his health condition/disability. (*Id.*)

The morning of Monday, May 7, 2012, Plaintiff's wife, Bonnie L. Rosen, received a telephone call from Phyllis Niegelberg, wife of Joel Niegelberg, Defendant's vice president of finance and accounting. (*Id.* ¶ 26.) Mrs. Neigelberg informed Mrs. Rosen that Plaintiff had not reported for work or called in, which was extremely unusual. (*Id.*) Mrs. Rosen was out of town when she received Mrs. Niegelberg's call and immediately telephoned her adult children, both of whom reside in Memphis, Tennessee, to inquire as to Plaintiff's whereabouts. (*Id.* ¶ 27.) When Plaintiff's daughter went to the Rosen home to check on Plaintiff, she discovered Plaintiff unconscious and called for emergency medical assistance. (*Id.* ¶ 28.) Emergency personnel responded and transported Plaintiff to the emergency room at Methodist LeBonheur Germantown Hospital in Germantown, Tennessee. (*Id.*)

4

While Plaintiff was in the emergency room, his son received a telephone call from Overman. (*Id.* ¶ 29.) Plaintiff's daughter spoke to Overman and explained that Plaintiff had intentionally overdosed on prescription medication and was in critical condition. (*Id.*) On May 8, 2012, Mrs. Rosen spoke to Overman and explained Plaintiff's attempted suicide and current medical condition. (*Id.* ¶ 31.) When Mrs. Rosen spoke with Overman again on the following day, Overman informed Mrs. Rosen that she would be receiving FMLA paperwork from Guardsmark. (*Id.* ¶ 32.) Overman directed Mrs. Rosen to contact Martin with any questions about the FMLA paperwork. (*Id.*) On May 10, 2012, Mrs. Rosen spoke with Martin about the FMLA paperwork, and Martin advised Mrs. Rosen that she could complete the FMLA paperwork on Plaintiff's behalf. (*Id.* ¶ 33.) Plaintiff remained in intensive care and upon discharge from the hospital was transferred to the psychiatric ward of St. Francis Hospital in Memphis, Tennessee, where he received treatment until May 21, 2012. (*Id.* ¶ 30.)

During Plaintiff's hospitalization, he received two checks from Guardsmark in the amounts of $2,681.36 and $1,458.09. (*Id.* ¶ 34.) Each check was dated May 18, 2012. (*Id.*) Mrs. Rosen attempted to contact Martin to inquire about the checks but did not receive a response from Martin. (*Id.*)[4] A few days into Plaintiff's hospitalization, Mrs. Rosen also received FMLA paperwork from Guardsmark. (*Id.* ¶ 36.) Mrs. Rosen completed the paperwork, including documents entitled "Guardsmark Application for Leave of Absence under the Provisions of The Family and Medical Leave Act of 1993" and the U.S. Department of Labor's "Certification of Health Care Provider for Employee's Serious Health Condition." (*Id.*) By completing and submitting these documents,

---

[4] The Amended Complaint alleges that Mrs. Rosen called Martin four times between May 30 and June 1 and also sent Martin an email on June 1, 2012. (Am. Compl. ¶ 35.)

Plaintiff requested a medical leave of absence from work at Guardsmark due to his serious health condition as certified by his authorized health care provider. (*Id.* ¶ 37.) Plaintiff indicated on the paperwork that his last day of work had been May 4, 2012, and his anticipated return to work was July 8, 2012. (*Id.*) Mrs. Rosen returned the completed FMLA paperwork to Martin by fax on May 22, 2012. (*Id.* ¶ 38.)

Less than two weeks later, without any intervening communication with Plaintiff, Guardsmark terminated Plaintiff's employment. (*Id.*) Plaintiff received a termination letter by Fed Ex, dated June 4, 2012 and signed by Martin. (*Id.* ¶ 39.) Martin's letter stated that Guardsmark had eliminated Plaintiff's position in the communications department effective June 1, 2012. (*Id.*)[5] The letter further stated that Plaintiff's termination was part of a company-wide reduction in workforce, though no such reduction actually took place. (*Id.* ¶ 40.) As for Plaintiff's FMLA request, the termination letter stated that "[s]ince your position with the company is being eliminated, Guardsmark has no basis to grant and therefore declines your application for leave under the Family Medical Leave Act (FMLA)." (*Id.*) Plaintiff was terminated from his employment at Guardsmark despite his good standing with the company and a complete lack of disciplinary action on his record. (*Id.* ¶ 41.)

After Plaintiff's termination, other persons without disabilities took on his job responsibilities, including Phoebe Neal Moore (Defendant's marketing manager), Randy Bruce (publications manager), and Tiffany Derrick (a marketing specialist and secretary). (*Id.* ¶ 42.) At the time of his termination, Plaintiff was earning approximately $140,600.00 per year, plus company

---

[5] Plaintiff has attached a copy of the termination letter as exhibit A to the Amended Complaint.

benefits. (*Id.* ¶ 43.) Plaintiff was not offered a severance package in spite of Guardsmark precedent and policy of offering severance to employees with comparable years of service. (*Id.* ¶ 44.) Plaintiff intended to work at Guardsmark until he reached the age of 70 in September 2018. (*Id.* ¶ 45.)

In their Motion to Dismiss, Defendants argue that the Amended Complaint fails to state FMLA claims or a claim for IIED as well as any claim against the individual Defendants.[6] Defendants contend that the pleadings do not contain enough facts to show that Plaintiff was entitled to leave or that the reduction of force was a pretext for retaliation. Specifically, Plaintiff's FMLA interference claim fails because Plaintiff has not alleged that he was entitled to leave under the FMLA. According to Defendants, the Amended Complaint alleges that Plaintiff's position was eliminated as part of a reduction in force at the time he made his request for FMLA leave. As such, Plaintiff was not entitled to leave. Plaintiff also fails to plead any facts to support his allegation that no reduction in force actually occurred at Guardsmark. Defendants argue that Plaintiff has failed to state his FMLA retaliation claim because the Amended Complaint does not allege all of the prima facie elements of the claim. Plaintiff has not alleged any facts to support a causal connection between his request for FMLA leave and his termination. For these reasons, Defendants assert that the Court should dismiss Plaintiff's FMLA claims.

As for Plaintiff's IIED claim, Defendants contend that the Amended Complaint fails to allege all of the elements of the claim, particularly that Defendants' conduct was so outrageous that it is

---

[6] In the introductory paragraph of their memorandum, Defendants state that the individual Defendants "were at all times acting within the course and scope of their employment and as representatives of Guardsmark, are therefore, not personally liable and should be dismissed from this case." Mem. in Support 1 (D.E. # 21-1), Page ID 205. Defendants have not elaborated on this argument or cited any authority to support their position. Therefore, the Court declines to consider it further in deciding the other issues presented in the Motion to Dismiss.

7

not tolerated by a civilized society or that Plaintiff has suffered a severe mental injury as a result of Defendants' conduct. Defendants make the alternative argument that Plaintiff's IIED claim is barred by the exclusive remedy rule of the Tennessee Workers' Compensation Act. According to Defendants, the exception to this rule, that an employee can recover against an employer for acts committed with the actual intent to harm the employee, is not applicable here. The Amended Complaint fails to plead that Defendants acted with actual intent to commit the tort of IIED. Moreover, Defendants argue that Plaintiff's IIED claim accrued on May 4, 2012, the last day Plaintiff worked at Guardsmark. Thus, the one-year statute of limitations on the claim had run by the time Plaintiff filed his initial complaint on May 31, 2013. Therefore, Defendants request that the Court dismiss Plaintiff's IIED claim.

Plaintiff has filed a response in opposition to Defendants' Motion to Dismiss. Plaintiff begins by noting that Defendants have asserted without elaboration that the individual Defendants cannot be personally liable to Plaintiff. Plaintiff argues that the individual Defendants can be held personally liable under the FMLA and cites for support an unreported decision from another member of this Court.[7] With respect to his FMLA claims, Plaintiff contends that the Amended Complaint has plausibly alleged both interference and retaliation. Plaintiff argues that the Amended Complaint contains sufficient facts to show that Plaintiff was entitled to FMLA leave. Plaintiff need not allege detailed facts in his pleadings to rebut Defendant's contention that a reduction in force occurred. Likewise, Plaintiff maintains that he is not required to plead detailed facts in order to plead the causation element of his retaliation claim. Plaintiff has alleged the facts and circumstances

---

[7] *Brown v. CBK*, No. 1:05-1171-T-An, 2005 WL 3263873, at *2 (W.D. Tenn. Nov. 28, 2005) (Todd, J.).

surrounding his assertion of FMLA rights and his termination, thereby giving Defendants' adequate notice of the claim. According to Plaintiff, Defendants argue for a standard that is improper at the pleadings stage and is better left for summary judgment.

Concerning Plaintiff's IIED claim, Plaintiff responds that he has pleaded the claim with sufficient detail. Plaintiff asserts that the following allegation suffices to plead outrageous conduct: "Defendants' conduct was outrageous and may not be tolerated by a civilized society."[8] Plaintiff emphasizes his allegations that Defendants intentionally eliminated his job in order to deny him his rights under the FMLA. Plaintiff further argues that the exclusive remedy rule does not apply in this case because the Amended Complaint alleges that Defendants acted with actual intent to harm Plaintiff. Specifically, Plaintiff contends that his allegations about Defendants' terminating his employment only two weeks after he requested FMLA leave plausible suggests actual intent. Finally, Plaintiff argues that his IIED claim is not time barred. Plaintiff's argument on this issue is less than clear; however, it appears that Plaintiff simply maintains that his IIED claim accrued on or around the effective date of his termination. Therefore, Plaintiff argues that the Court should deny Defendants' Motion to Dismiss.

**STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe

---

[8] Pl.'s Resp. in Opp'n 12 (D.E. # 25), Page ID 291.

all of the allegations in the light most favorable to the non-moving party.⁹ However, legal conclusions or unwarranted factual inferences need not be accepted as true.¹⁰ "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."¹¹

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."¹² Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."¹³ In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."¹⁴ "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."¹⁵

## ANALYSIS

### I. FMLA Interference

---

⁹ *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

¹⁰ *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

¹¹ *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

¹² Fed. R. Civ. P. 8(a)(2).

¹³ *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

¹⁴ *Twombly*, 550 U.S. at 555, 570.

¹⁵ *Iqbal,* 556 U.S. at 678.

The FMLA makes it unlawful for employers "to interfere with, restrain, or deny the exercise or the attempt to exercise any right provided under [the FMLA]."[16] Under an interference theory, "any violation of the FMLA –or of the regulations implementing it– constitutes . . . unlawful interference."[17] The Sixth Circuit has explained that the employer's intent is not relevant to the analysis of an FMLA interference claim,[18] although the FMLA is not a strict-liability statute.[19] Put another way, "the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation."[20] An employee alleging an interference claim against his employer must establish that the employer's violation caused him harm.[21]

To establish a claim for interference, Plaintiff must demonstrate by a preponderance of the evidence that (1) he was an "eligible employee" as defined by 29 U.S.C. § 2611(2); (2) the defendant is an "employer" as defined by 29 U.S.C. § 2611(4); (3) the employee was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave as defined by 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA

---

[16] 29. U.S.C. § 2615(a)(1).

[17] 29 C.F.R. § 825.220(b); *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004).

[18] *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (quoting *Arban v. West Pub. Corp.*, 345 F.3d 390 (6th Cir. 2003) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.").

[19] *Edgar*, 443 F.3d at 507–508.

[20] *Allen v. Butler County Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009).

[21] *Edgar*, 443 F.3d at 507–508 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

benefits to which she was entitled, or has "somehow used the leave against [the employee] in an unlawful manner, as provided in either the statute or regulations."[22] "[A]n employer may [not] use an employee's taking of FMLA leave as a negative factor in [an] employment action. . . ."[23] As the Sixth Circuit has explained, "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled."[24]

The Court holds that the Amended Complaint has plausibly alleged a claim for interference under the FMLA. Construing the factual allegations of the Amended Complaint in the light most favorable to Plaintiff, the pleadings plausibly allege that Plaintiff was entitled to FMLA leave. An employee is entitled to FMLA leave "if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'"[25] For purposes of the Motion to Dismiss, Defendants do not dispute that Plaintiff had a serious health condition that made him unable to perform his job. In their memorandum Defendants state "at the time [Plaintiff] requested leave, Guardsmark had decided to eliminate [Plaintiff's] position."[26] In other words, Defendants essentially argue that Plaintiff was not entitled to leave because he was no longer "an eligible employee."

---

[22] *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

[23] 29 C.F.R. § 825.220(c); *see, e.g., Brenneman*, 366 F.3d at 422.

[24] *Wysong*, 503 F.3d at 447.

[25] *Arban*, 345 F.3d at 400 (quoting 29 U.S.C. § 2612(a)(1)(D)); *see also Tillman v. Ohio Bell Tele. Co.*, No. 11-3857, 2013 WL 5539612, at * 13 (6th Cir. Oct. 8, 2013).

[26] Defs.' Renewed Mot. to Dismiss 7 (D.E. # 21-1), Page ID 211.

The Court finds Defendants' argument to be unconvincing. Defendants' view of the pleadings fails to accept all of the facts alleged in the light most favorable to Plaintiff. According to the Amended Complaint, Plaintiff's spouse spoke with Martin as late as May 10, 2012, and received instructions on requesting FMLA leave. Shortly thereafter, Plaintiff made his formal written request for FMLA leave on May 22, 2012. At no time prior to Plaintiff's leave request did Martin or any other employee of Guardsmark indicate that Plaintiff was about to lose his job or that his FMLA request would be denied if his employment was terminated. Plaintiff received notice on June 4, 2012, that Guardsmark had terminated his employment effective June 1, 2012.

Based on these fact pleadings, Plaintiff was employed with Guardsmark through June 1, 2012, and thus was an eligible employee when he submitted his FMLA paperwork on May 22, 2012. Moreover, the pleadings are silent about the timing of Guardsmark's decision to terminate Plaintiff's employment. The timing of the decision to eliminate Plaintiff's position is critical to his interference claim and is a question of fact, which the Court cannot resolve at the pleadings stage. The Sixth Circuit has held that at summary judgment "the timing of this decision [to terminate an employee] could lead a fact finder to infer that the employee would not have been fired absent her taking of leave."[27] Without an opportunity for discovery, Plaintiff would have no information about Defendants' decision to eliminate his job, who was involved in the decisionmaking process, or when the final decision was made. Defendants have cited no authority for the proposition that Plaintiff must allege detailed facts to rebut the reduction in force explanation proffered by Guardsmark in

---

[27] *Arban*, 345 F.3d at 402.

13

Plaintiff's termination letter in order to plead his eligibility for FMLA leave.[28] The Court holds then that the allegations of the Amended Complaint plausibly show that Plaintiff was eligible for FMLA leave at the time of he made his request for leave on May 22, 2012. Therefore, Defendants' Motion to Dismiss is **DENIED** as to this issue.

**II. FMLA Retaliation**

An employer may not "discharge or in any other manner discriminate against an individual for opposing any practice made unlawful by [the FMLA]."[29] An FMLA retaliation claim is different than an interference claim, because under a retaliation theory, the intent of the employer matters.[30] "The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights."[31] Retaliation claims may be proved with either direct or indirect evidence.[32] "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[33]

---

[28] *Cf. Taylor v. Union Inst.*, 30 F. App'x 443, 452–53 (6th Cir. 2002) ("It is important to note that the same Department of Labor regulations interpreting the FMLA also place the 'burden of proof' on the defendant-employer to show that an employee on protected leave would have been laid off even if she had not taken leave, 29 C.F.R. § 825.216(a)(1).").

[29] 29 U.S.C. § 2615; 29 C.F.R. § 825.220.

[30] *Edgar*, 443 F.3d at 508.

[31] *Id.*

[32] *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

[33] *Id.*; *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Where the plaintiff relies on indirect evidence, the Court will analyze the claim under the three-step *McDonnell Douglas* burden-shifting framework.[34] First, the employee must make a prima facie case of unlawful retaliation.[35] To establish a prima facie case of retaliation, the employee must demonstrate that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.[36] Once the plaintiff has established a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action.[37] If the employer has articulated a legitimate reason for its action, the plaintiff must then demonstrate that "the proffered reason was not the true reason for the employment decision."[38]

The Court holds that the Amended Complaint plausibly states a claim for retaliation under the FMLA. Plaintiff has alleged specific dates and times at which his wife discussed his medical condition and need for leave with Overman and Martin in May 2012. Plaintiff has identified the precise FMLA forms his wife completed and submitted on his behalf on May 22, 2012. Thus, the pleadings plausibly show that Plaintiff engaged in protected activity by seeking FMLA leave. Furthermore, the pleadings allege that Defendants took an adverse employment action against

---

[34] *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) ("An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*.").

[35] *Bell v. Prefix, Inc.*, 321 F. App'x 423, 426 (6th Cir. 2009).

[36] *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000).

[37] *Bell*, 321 F. App'x. at 426.

[38] *Morris*, 201 F.3d at 792–93.

Plaintiff, which would dissuade a reasonable worker from making or supporting a claim for FMLA benefits.[39] Plaintiff contends that Defendants terminated his employment because he made a request for FMLA leave. On this point, Defendants argue that other than the close temporal proximity, Plaintiff has failed to allege a causal connection between his request for leave and his termination. However, the Sixth Circuit has held that an FMLA plaintiff need not plead each element of the prima facie case under the McDonnell Douglas burden-shifting framework.[40] Instead an FMLA plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] Specifically, the Sixth Circuit has concluded that a plaintiff states a plausible claim for retaliation under the FMLA where the pleadings allege the employer's unlawful actions, the employee's protected activity, and an adverse action coming "mere months" after the employee engaged in protected activity.[42] Under this standard, the Court holds that the Amended Complaint easily satisfies the pleading standards for an FMLA retaliation claim. Therefore, the Motion to Dismiss is **DENIED** as to this issue.

**III. Intentional Infliction of Emotional Distress**

To prove a claim for IIED, Plaintiff must show that: (1) the conduct complained of was

---

[39] *Crawford v. JP Morgan Chase & Co.*, No. 12-3698, 2013 WL 3984999, at *5 (6th Cir. Aug. 6, 2013).

[40] *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 583–84 (6th Cir. 2012); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002) (holding that the prima facie case under McDonnell Douglas is an evidentiary standard, not a pleading requirement); *Keys v. Humana, Inc.*, 684 F.3d 605, 609–10 (6th Cir. 2012).

[41] *Rhodes*, 491 F. App'x at 583–84. (quoting *Iqbal*, 556 U.S. at 678).

[42] *Id.*

intentional or reckless, (2) it was so outrageous that it is not tolerated by a civilized society, and (3) it resulted in serious mental injury.[43] Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities."[44] Thus, a plaintiff seeking damages for IIED must meet "an exacting standard," one which requires a plaintiff to prove conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."[45] "Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it."[46] Discrimination or termination of one's employment is typically insufficient to prove an IIED claim.[47]

The Court holds that the Amended Complaint fails to state an IIED claim. The only specific allegations made in support of Plaintiff's IIED claim are as follows: Defendants' conduct was "intentional and/or reckless;" "Defendants' conduct is outrageous and may not be tolerated by civilized society;" and "Plaintiff has suffered and continues to suffer serious mental injury" as a result of Defendants' conduct.[48] While it is true that the IIED count in the Amended Complaint

---

[43] *Bain*, 936 S.W.2d at 622.

[44] *Id.* (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)); *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003).

[45] *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

[46] *Arnett*, 124 S.W.3d at 540.

[47] *Nettles v. Hotel Peabody, G.P.*, No. 2:09-CV-02776-JPM, 2010 WL 5093362, at *3 (W.D. Tenn. Dec. 8, 2010) (citations omitted).

[48] Am. Compl. ¶¶ 94, 95.

17

incorporates paragraphs 1 through 46 of the pleadings, the Court finds that Plaintiff has merely set out "a formulaic recitation of the elements of a cause of action" for IIED.[49] Plaintiff has not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[50] Moreover, Plaintiff has cited no case holding that the mere recitation of the elements of an IIED claim suffices for purposes of Rule 12(b)(6). Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's IIED claim. The Court declines to reach Defendants' alternative arguments for dismissal of the IIED claim based on the Tennessee workers compensation law or the statute of limitations.

## CONCLUSION

Defendants' Renewed Motion to Dismiss is granted as to Plaintiff's IIED claim and denied as to Plaintiff's interference and retaliation claims under the FMLA. Therefore, the Renewed Motion is **GRANTED IN PART, DENIED IN PART**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 20, 2013.

---

[49] *Reilly*, 680 F.3d at 622 (quoting *Twombly*, 550 U.S. at 555)).

[50] *Iqbal,* 556 U.S. at 678.